IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| NICOLE STAMP,<br><br>Plaintiff,<br><br>vs.<br><br>GENERAL ELECTRIC CAPITAL CORPORATION,<br><br>Defendant. | Case No. CV-12-123-BLG-RFC<br><br>ORDER DENYING MOTION TO DISMISS OR COMPEL ARBITRATION |

## I. INTRODUCTION

Plaintiff Nicole Stamp brings this action against her former employer, Defendant General Electric Capital Corporation ("GECC"), an automobile financing company, claiming wrongful discharge. GECC argues Stamp agreed to arbitrate all wrongful discharge claims when she accepted employment with GECC and has therefore moved to dismiss this suit or, in the alternative, compel arbitration. Because third parties will be necessary for the resolution of Stamp's claims, her claim is not one of the types of claims subject to arbitration and GECC's motion must be denied.

1

## II. FACTUAL BACKGROUND

GECC has an office in Billings, Montana that holds automobile titles from transactions across the United States. Stamp started her employment with GECC in the Billings office in February of 2011 as a Titles Associate. Her job was to review and release titles.

The offer of employment was contingent on Stamp's agreement to the terms in conditions in GECC's "Acknowledgment–Conditions of Employment," one of those conditions was that she agree to resolve all disputes through GECC's "Solutions." Ex. A to GECC's Brief in Support, Doc. 7-1. Solutions is a GECC's alternative dispute resolution procedure designed to provide a "fair, quick and efficient process to resolve certain claims arising out of or related to their employment relationship …" Ex. B to GECC's Brief in Support, Doc. 7-2. Solutions contains four levels of procedures to resolve disputes, the last of which is binding arbitration. By signing the "Acknowledgment," Stamp acknowledged she had received and reviewed Solutions, agreed to resolve disputes through Solutions, and waived the right to pursue "Covered Claims" in court. Doc. 7-1, ¶ 5. Stamp again signed the "Acknowledgment–Conditions of Employment" when she started work on February 7, 2011. Doc. 7-1, pp. 5-6.

In November of 2011, Stamp received a Service Request to release a title to Manti's Transportation in New York.  She remembers being confused by this Service Request because the documentation was unusual.  First, there was no original title issued directly to Manti's Transportation, only a title endorsed on the back to Manti's Transportation by the prior owner.  Second, although the endorsed title was issued in New York, the file did not include an original New York title with a lien to GECC or its predecessor.  Finally, although the file contained paperwork filed in Oklahoma to obtain a lien, there was no Oklahoma certificate of title in the file.  Stamp could not confirm whether GECC sill held a lien on the asset in Oklahoma or whether the asset was still titled in New York and delivered the certificate of title and lien documents to Alfred Manti/Manti's Transportation in New York.

During a December, 2011 team meeting involving her supervisor and a GECC in-house attorney, Stamp was told she should not have released the title to Alfred Manti because there was litigation involving the title.  Stamp was also told that if Alfred Manti tried to contact her, she should not speak with him.  Stamp noted that during the meeting, the in-house attorney had another title and Oklahoma lien papers for a second vehicle.  Stamp asserts the litigation referenced by her supervisors was former lawsuits relating to vehicles purchased by Manti's

Transportation and that the titles would have been material evidence in support of Manti's Transportation's claims and defenses in those lawsuits. Stamp also notes that her attorney has been contacted by the U.S. Attorney for the Eastern District of Pennsylvania regarding Manti's Transportation.

Stamp was terminated effective February 6, 2012, for "unprofessional and disruptive behaviors."

### III. ANALYSIS

The purpose of the Federal Arbitration Act ("FAA") was to overcome judicial hostility to arbitration that resulted in courts' refusing to enforce arbitration agreements. *Kilgore v. Keybank, Nat. Ass'n,* --F.3d --, 2013 WL 1458876, * 2 (9th Cir. April 11, 2013). In furtherance of this goal, it declares agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2. Section 2 "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id., quoting Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The role for courts it to determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.* The party opposing arbitration bears the burden of proving that the claims at issue are

unsuitable for arbitration. *Hoffman v. Citibank (South Dakota), N.A,* 546 F.3d 1078, 1082 (9th Cir,. 2008). Here, the Court need not consider whether the arbitration agreement is valid and enforceable against Stamp because her claim in this case is not subject to resolution through Solutions.

In determining whether a particular claim is subject to arbitration, courts must look to the "language of the contract that defines the scope of claims subject to arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). Solutions defines "Covered Claims" as those "that arise out of or are related to an employee's employment or cessation of employment" and further provides specific examples of "Covered Claims," including "[c]laims relating to involuntary terminations …, [r]etaliation claims for legally protected activity and/or for whistleblowing …, and [c]laims of violation of public policy." Ex. A to GECC's Reply Brief, Doc. 10-1, pp. 5-6. Stamp' s wrongful discharge claim is obviously a claim contemplated by Solutions.

But Solutions also contains a list of "Excluded Claims." Doc. 10-1, at p.6. Relevant here, Solutions expressly excludes claims brought by Covered Employees "where a third party would be necessary to the resolution of any claims …" *Id.* Stamp argues that in order to prosecute her claim that she was terminated for a violation of public policy, she will have to call witnesses and obtain

5

discovery from various third-parties, including Manti's Transportation and GECC's predecessor in interest.

GECC responds that the fact that third parties have evidence in support of Stamp's claims does not render them "necessary to the resolution" of the claim and argues that the Solutions contains procedures for third party discovery. *See* doc. 10-1, pp. 17-20. While at first that argument seems to have merit, a closer look reveals that Solutions does not guarantee third party discovery. For example, Solutions defines "Discovery" as "the process by which parties to a pending Covered Claim obtain certain non-privileged information in the *possession, custody or control of the other party,* which is relevant to the proof or defense of the Covered Claim …" Doc. 17-1, p.17. Moreover, under the heading "Guidelines for Discovery," Solutions provides that '[e]ither party may seek *from the other party* discovery of the types described below to the extent relevant to claims or defenses before the arbitrator." *Id.* at p.18. And the types of discovery described in Solutions do not contemplate third party discovery. Specifically, "Interrogatories" are defined as written questions "to the other party," "Document Requests" refers to items "in the responding party's possession," and "Requests for Admission" seek the "responding party's admission." *Id.* Finally, although Solutions authorizes the arbitrator to issue subpoenas, it only references subpoenas

"served on the other party." *Id.* at p. 20. If Solutions were intended to provide for third party discovery it should say so. *See e.g. McIntosh v. Adventist Health/West St. Helena Hosp.,* 2013 WL 968293, * 6 (N.D. Cal March 26, 2013) (slip op.) (involving an arbitration agreement authorizing arbitrator to issue subpoenas to third parties).

Having determined that Solutions does not provide for third party discovery, it makes sense that Solutions excludes claims "where a third party would be necessary to the resolution of any claims …" Accordingly, Stamp's claim is not subject to arbitration. The Court therefore need not consider Stamp's arguments that the arbitration provision is unconscionable or that GECC has waived its right to rely on the arbitration provision through failure to invoke it or failure to provide Stamp with a copy of Solutions within seven days of termination as required by Mont. Code Ann. § 39-2-911(3).

## IV. ORDER

For those reasons, **IT IS ORDERED** that GECC's Motion to Dismiss, or in the Alternative, to Stay Proceedings and Compel Arbitration (doc. 6) is **DENIED**.

Dated this 22nd day of April, 2013.

                                           */s/ Richard F. Cebull*_____
                                           Richard F. Cebull
                                           Senior United States District Judge