IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| NICOLE STAMP,<br><br>Plaintiff,<br><br>vs.<br><br>GENERAL ELECTRIC CAPITAL CORPORATION,<br><br>Defendant. | Cause No. CV 12-123-BLG-DLC-RKS<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

**SYNOPSIS**

Plaintiff Nicole Stamp brings this action for wrongful discharge against her former employer, Defendant General Electric Capital Corporation ("GECC"). Stamp alleges she was terminated without good cause, in retaliation for reporting violations of public policy, and in contravention of GECC's written personnel policies after she uncovered a title skipping scheme in her work as a Title Associate. CD 3. Pending before the Court is GECC's Rule 60(b) motion (CD 17) for relief from this Court's Order (CD 11) denying GECC's motion to compel arbitration (the "Order Denying Arbitration"). After a thorough review, the Court

1

concludes the motion to compel arbitration was erroneously denied because the arbitration procedure employed by GECC does provide for third-party discovery and will therefore provide Stamp an appropriate forum to prosecute her wrongful discharge claim. GECC's motion to compel arbitration should be granted.

## JURISDICTION

Ms. Stamp filed this action in Montana's Thirteenth Judicial District Court, but GECC properly removed to this Court on diversity grounds. CD 1, 4. The Court has personal jurisdiction over the parties, all of whom are found in Montana. Fed. R. Civ. P. 4(k)(1)(A); Mont. R. Civ. P. 4(b). The case was initially assigned to District Judge Richard Cebull, but was reassigned to Chief Judge Dana Christensen upon Judge Cebull's retirement and referred to this Court in compliance with Local Rule 72.2(b). CD 12. Although GECC filed its Rule 60(b) motion simultaneously with its appeal of the Order Denying Arbitration, the Rule 60(b) motion is properly considered because the Court of Appeals has held its proceedings in abeyance pending this Court's ruling on the motion. Order, Stamp v. General Electric Capital Corporation, No.13-35446 (9th Cir. June 4, 2013), citing Leader Nat'l Ins. Co. v. Indus. Indem. Ins. Co., 19 F.3d 444, 445 (9th Cir. 1994) ("notice of appeal filed while a Fed.R.Civ.P. 59 motion is pending is no longer a nullity, but, rather, is merely held in abeyance until the motion is

2

resolved").

The Ninth Circuit has not decided whether a motion to compel arbitration is properly decided by a magistrate judge without consent of the parties and district courts are split on the issue.  <u>District Council 16 International Union of Painters and Allied Trades, Painters Local No. 3 v. LML Enterprises</u>, 2013 WL 3802837, (N.D. Cal., June 14, 2013).  In any event, since a motion to compel arbitration is analogous to a motion to a remand or a motion to dismiss for improper venue, the best practice is for this Court to submit findings and recommendations on the motion pursuant to 28 U.S.C. § 636(b)(1)(B).  <u>Id.</u>

## STATUS

Pending before the Court is GECC's Motion for Relief from Order Denying Motion to Dismiss or Compel Arbitration Pursuant to Rule 60(b).  CD 17.  Soon after removal, GECC filed its Motion to Dismiss, or In the Alterative, to Stay Proceedings and Compel Arbitration.  CD 6.  GECC's motion was denied on the grounds that the arbitration procedure did not allow Stamp to depose necessary third-parties and Stamp's suit was therefore not the type of claim subject to the arbitration agreement.  CD 11.  Although Stamp had argued the arbitration agreement was unenforceable because it was unconscionable and GECC had waived its right to arbitrate, the Order Denying Arbitration did not consider these

3

arguments because it concluded the arbitration agreement did not "encompass the dispute at issue." See Kilgore v. KeyBank, Nat. Ass'n, 718 F.3d 1052, 1058 (9th Cir. 2013).

In the instant motion, GECC argues that the arbitration procedure required by the arbitration agreement does allow for third-party discovery and that the Order Denying Arbitration erred in concluding otherwise. It further argues that recent authority from the Ninth Circuit and the Supreme Court leave this Court no choice but to enforce the arbitration agreement. For the following reasons, this Court concludes Solutions does provide for third-party discovery and the arbitration agreement must be enforced.

**STANDARDS**

Rule 60(b)(1) Fed.R.Civ.P. authorizes the Court, on a motion and upon such terms as are just, to relieve a party from a final judgment or order for the following mistake, inadvertence, surprise, or excusable neglect. Rule 60(b)(1) grants courts the authority to correct its own mistakes, Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d 347, 350 (9th Cir. 1999), and has been invoked to seek relief from a district court's ruling on a motion to compel arbitration. See, e.g., Thiele v. Merrill Lynch, Pierce, Fenner & Smith, 59 F. Supp.2d 1060 (S.D. Cal. 1999).

The Federal Arbitration Act ("FAA") facilitates private dispute resolution

4

by making arbitration agreements in contracts involving interstate commerce presumptively "valid, irrevocable, and enforceable." Mortensen v. Bresnan Communications, LLC, 722 F.3d 1151, 1157 (9th Cir. 2013), citing Kilgore, 722 F.3d at 1057, quoting 9 U.S.C. § 2. The law was enacted in response to prevalent judicial refusal to enforce arbitration agreements and embodies "a liberal federal policy favoring arbitration." Id., citing AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1745 (2011) Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Id., citing Kilgore, 722 F.3d at 1058. In determining whether to compel arbitration, courts must determine (1) whether there was a valid agreement to arbitrate between the parties and (2) whether the arbitration agreement covers the dispute at issue. Kilgore, 718 F.3d at 1058.

With regard to the first issue, the Supremacy Clause ensures that because it is substantive federal law, the FAA preempts contrary state law, although the FAA savings clause does not require the enforcement of arbitration agreements on "such grounds as exist at law or in equity for the revocation of any contract." Mortensen, 722 F.3d at 1158, quoting 9 U.S.C. § 2. Since the savings clause preserves generally applicable contract defenses, including fraud, duress, and

unconscionability, parties commonly invoke the savings clause to evade arbitration. But recent cases from the Supreme Court have condemned this practice and made clear that state law rules that stand as obstacles to arbitration are preempted. Id., citing Concepcion, and Marmet Health Care Center, Inc. v. Brown, — U.S. —, 132 S.Ct. 1201, 1203 (2012) ("When state law prohibits ... the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."). It is now firmly established that the FAA favors arbitration, rather than merely affording it equal footing, and that state laws that are unfavorable to arbitration are preempted, regardless of the savings clause. Id. In sum, any "general state-law contract defense, based in unconscionability or otherwise, that has a disproportionate effect on arbitration is displaced by the FAA." Id.

When considering whether a particular claim is subject to the arbitration agreement, courts look to the "language of the contract that defines the scope of claims subject to arbitration." E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002).

**FACTS**

GECC has an office in Billings, Montana that holds automobile titles from transactions across the United States. Stamp started her employment with GECC

in the Billings office in February of 2011 as a Titles Associate. Her job was to review and release titles.

The offer of employment was contingent on Stamp's agreement to the terms in conditions in GECC's "Acknowledgment–Conditions of Employment." One of those conditions was that she agree to resolve all disputes through GECC's "Solutions." Ex. A to GECC's Brief in Support, Doc. 7-1. Solutions is a GECC's alternative dispute resolution procedure. GECC claims it is designed to provide a "fair, quick and efficient process to resolve certain claims arising out of or related to their employment relationship …" Ex. B to GECC's Brief in Support, Doc. 7-2. Solutions contains four levels of procedures to resolve disputes, the last of which is binding arbitration. By signing the "Acknowledgment," Stamp acknowledged she had received and reviewed Solutions, agreed to resolve disputes through Solutions, and waived the right to pursue "Covered Claims" in court. Doc. 7-1, ¶ 5. Stamp again signed the "Acknowledgment–Conditions of Employment" when she started work on February 7, 2011. Doc. 7-1, pp. 5-6.

In November of 2011, Stamp received a Service Request to release a title to Manti's Transportation in New York. She remembers being confused by this Service Request because the documentation was unusual. There was no original title issued directly to Manti's Transportation, only a title endorsed on the back to

Manti's Transportation by the prior owner. And although the endorsed title was issued in New York, the file did not include an original New York title with a lien to GECC or its predecessor. Finally, although the file contained paperwork filed in Oklahoma to obtain a lien, there was no Oklahoma certificate of title in the file. Stamp could not confirm whether GECC sill held a lien on the asset in Oklahoma or whether the asset was still titled in New York, but she nonetheless delivered the certificate of title and lien documents to Alfred Manti/Manti's Transportation in New York.

During a December, 2011 team meeting with her supervisor and a GECC in-house attorney, Stamp was told she should not have released the title to Alfred Manti because of litigation involving the title. Stamp was also told that if Alfred Manti tried to contact her, she should not speak with him. Stamp noted that during the meeting, the in-house attorney was in possession of another title and Oklahoma lien papers for a second vehicle. Stamp asserts the litigation referenced by her supervisors was former lawsuits relating to vehicles purchased by Manti's Transportation and that the titles would have been material evidence in support of Manti's Transportation's claims and defenses in those lawsuits. Stamp also notes that her attorney has been contacted by the U.S. Attorney for the Eastern District of Pennsylvania regarding the situation.

8

Stamp was terminated effective February 6, 2012, for "unprofessional and disruptive behaviors."

## ANALYSIS

The Order Denying Arbitration concluded that in general, wrongful discharge claims were "Covered Claims" under Solutions, but that Stamp's particular wrongful discharge claim was an "Excluded Claim" because "a third party would be necessary to the resolution of" her claim. CD 11, pp. 5-6, citing CD 10-1, p. 6. Specifically, under Solutions, "Covered Claims" are claims "that arise out of or are related to an employee's employment or cessation of employment," including "[c]laims relating to involuntary terminations …, [r]etaliation claims for legally protected activity and/or for whistleblowing …, and [c]laims of violation of public policy." Ex. A to GECC's Reply Brief, Doc. 10-1, pp. 5-6. Such language would bring Stamp's wrongful discharge claim within Solutions.

But Solutions also excludes claims brought by Covered Employees "where a third party would be necessary to the resolution of any claims …" CD 10-1, p. 6. And Stamp will have to call witnesses and obtain discovery from various third-parties, including Manti's Transportation and GECC's predecessor in interest, to prove her claims. Since the Order Denying Arbitration concluded

9

Solutions did not authorize third-party discovery, it also concluded the necessary third party provision was meant to exclude claims such as Stamp's, where evidence from third-parties would be necessary to prove the claim. CD 11, pp. 5-6.

But in its Rule 60(b) motion, GECC persuasively argues that Solutions does provide for third-party discovery. Most importantly, if Solutions did not provide for third-party discovery, there would be no need for Solutions to authorize the arbitrator to "issue protective orders in response to a request … by a third-party witness." CD 10-1, p. 18. That in itself is enough to show the Order Denying Arbitration was entered in error.

Further, the Order Denying Arbitration incorrectly interpreted the Solutions provision on subpoenas. The Order Denying Arbitration concluded that because Solutions provides subpoenas must be served on the other party and the subpoena provision does not mention third-parties, Solutions must not contemplate third-party discovery. CD11, pp. 6-7. But GECC is correct that subpoenas are the tool for obtaining discovery from third parties and that there are other tools, including interrogatories, requests for production, and depositions, for obtaining discovery from parties. The fact that Solutions requires parties to serve subpoenas on the other party is entirely consistent with Rule 45(b)(1) Fed.R.Civ.P. and is not a basis

for concluding that Solutions does not provide for third-party discovery.

Finally, Solutions expressly provides the "arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, requests for admission or otherwise, as the arbitrator considers necessary for a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." CD 10-1, p. 17. The Court interprets this provision as granting the arbitrator broad authority to order third-party discovery.

Accordingly, the Court concludes the Order Denying Arbitration erroneously denied GECC's motion to compel arbitration on the grounds that Stamp's wrongful discharge claim was not contemplated by Solutions because Solutions did not provide for third-party discovery. Stamp's wrongful discharge claim is clearly contemplated by Solutions. The question then becomes whether Stamp and GECC entered into a valid agreement to arbitrate. Kilgore, 718 F.3d at 1058.

Stamp offers three arguments why Solutions is not binding on her: (1) the arbitration provision is unconscionable; (2) GECC has impliedly waived its right to compel arbitration; and (3) GECC failed to follow Montana law since it did not notify her of Solutions and provide her a copy within seven days of termination.

First, Mortensen holds that Montana's reasonable expectations/fundamental

11

rights rule, upon which Stamp relies in her arguments that Solutions is unconscionable (CD 9, pp. 10-14), is preempted by the FAA because it "disproportionally applies to arbitration agreements, invalidating them at a higher rate than other contract provisions." 722 F.3d at 1161.

As to waiver, the Ninth Circuit Court of Appeals has also recently made it very clear that courts must be reluctant to find waiver of the contractual right to arbitration because parties claiming waiver of the right to arbitrate bear a "heavy burden of proof." Richards v. Ernst & Young, LLP, —F.3d—, 2013 WL 4437601, *1 (9th Cir. Aug. 21, 2013). A party claiming waiver of the right to arbitration must establish knowledge of an existing right to compel arbitration, (2) acts inconsistent with that existing right, and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts. Id. GECC obviously knew it had a right to require Stamp to arbitrate any wrongful discharge claim, but even if the Court assumes GECC acted inconsistent with that right, which is unlikely since it moved to compel arbitration within one month of removal, there is no prejudice under Richards. If there is no prejudice even where the parties engaged in "years of litigation prior to the motion to compel" there can be no prejudice here, simply because, as Stamp claims, GECC did not notify her of the Solutions procedure until she filed this suit. See CD 9, pp. 14-16. Like the plaintiff in Richards, Stamp

12

was a party to an agreement mandating arbitration and she cannot claim prejudice because she filed suit in an incorrect forum. See id.

Finally, Stamp argues that GECC waived its right to arbitration because it did not follow procedural requirements imposed Montana's Wrongful Discharge from Employment Act. Mont. Code Ann. § 39-2-911(2) & (3) provides:

> (2) If an employer maintains written internal procedures, other than those specified in 39-2-912, under which an employee may appeal a discharge within the organizational structure of the employer, the employee shall first exhaust those procedures prior to filing an action under this part. The employee's failure to initiate or exhaust available internal procedures is a defense to an action brought under this part. If the employer's internal procedures are not completed within 90 days from the date the employee initiates the internal procedures, the employee may file an action under this part and for purposes of this subsection the employer's internal procedures are considered exhausted. The limitation period in subsection (1) is tolled until the procedures are exhausted. In no case may the provisions of the employer's internal procedures extend the limitation period in subsection (1) more than 120 days.
>
> (3) If the employer maintains written internal procedures under which an employee may appeal a discharge within the organizational structure of the employer, the employer shall within 7 days of the date of the discharge notify the discharged employee of the existence of such procedures and shall supply the discharged employee with a copy of them. If the employer fails to comply with this subsection, the discharged employee need not comply with subsection (2).

Stamp argues that Solutions is a written internal procedure under which she could appeal her discharge and that because GECC did not notify her of her rights under

13

Solutions and provide her with a copy of Solutions within 7 days, she is excused from complying with Solutions and its arbitration provision. In support, Stamp cites Eadus v. Wheatland Mem'l Hosp. and Nursing Home, in which the Montana Supreme Court held that even if the wrongful discharge plaintiff was previously provided a copy of the internal dispute resolution procedures and notified of the internal grievance procedure within 7 days, failure to provide the employee with a copy within 7 days of discharge excuses the employee from complying with the internal grievance procedures. 926 P.2d 752, 755-56 (Mont. 1996); see also Casiano v. Greenway Enterprises, Inc., 47 P.3d 432, 435 (Mont. 2002) (same) (overruled on other grounds by Giambra v. Kelsey, 162 P.3d 134, 140 n.2 (Mont. 2007).

Regardless, neither Eadus nor Casiano involved an agreement to arbitrate and § 39-2-911 does not speak of arbitration agreements, but of "written internal procedures … under which an employee may appeal a discharge within the organizational structure of the employer …" And even if § 39-2-911 were interpreted to apply to arbitration agreements, it would be preempted by the FAA as a generally applicable state law that stands as an obstacle to arbitration. Mortensen, 722 F.3d at 1159.

## CONCLUSION

The Order Denying Arbitration erred in concluding that Stamp's claim was not the type of claim contemplated by Solutions because Solutions did not provide for third-party discovery. Since Solutions does provide for third-party discovery, it covers the dispute at issue. And since (1) binding authority holds that Montana's unconscionability doctrine is preempted and (2) GECC did not waive its right to arbitrate, there is a valid agreement to arbitrate. Accordingly, the Court must compel arbitration of Stamp's wrongful discharge claim. Consistent with 9 U.S.C. § 3, this matter should be stayed until the case has been arbitrated in accordance with Solutions.

It is **RECOMMENDED:**

1. GECC's Motion for Relief from Order Denying Motion to Dismiss or Compel Arbitration Pursuant to Fed.R.Civ.P. 60(b) (CD 17) should be GRANTED and the April 22, 2013 Order Denying GECC's Motion to Dismiss or Compel Arbitration (CD 11) should be WITHDRAWN; and

(2) GECC's Motion to Stay Proceedings and Compel Arbitration (CD 6) should be GRANTED.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS &
RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), either party may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

If objections are filed, the objecting party must itemize each factual finding to which objection is made and identify the evidence in the record he relies on to contradict that finding. In addition, it must itemize each recommendation to which objection is made and set forth the authority relied upon to contradict that recommendation. L.R. 72.3(a).

Failure to assert a relevant fact or argument in objections to these Findings and Recommendations may preclude a party from relying on that fact or argument at a later stage of the proceeding. A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to

appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 26th day of September, 2013.

                                                 /s/ Keith Strong
                                                 Keith Strong
                                                 United States Magistrate Judge